Judge Hitchcock
delivered the opinion of the court:
This ease is one of considerable importance, and has been very fully and ably argued by the distinguished counsel of the respective parties. Its decision, however, depends, as I apprehend, upon, one single point rather than upon multifarious and intricate ques *348 tions of law ; and that is, as.to the manner in which Sneed’s entry should be surveyed. If it has been properly surveyed, it unquestionably appropriated the land in controversy. The evidence is sufficient to show that the complainant has now all the legal interest that was ever vested in Sneed and his devisees. Of course, as the entry of Sneed was prior in point of time to that of McDonald, under whom the defendant claims, it would seem that the-land, of right, belonged to complainant.
The entry of Sneed calls to begin at the lower back corner of David Walker’s entry, No. 1,298. Walker’s entry is one of a. series of entries, as appears by the proof in the case made on August 2, 1787. The first of this series is that of Benjamin Lawson, No. 489.
Lawson calls to begin on the bank of the Scioto river, eight miles above the mouth of Paint creed, on a straight line, thence running up the river for his base line five hundred poles, when reduced to a straight line, thence at right angles with the general course of the river for quantity.
After this, follows the entries of Archibald Blair, No. 440; of Robert Rose, No. 441; of Patrick Cams, No. 442; of William-White, No. 455; of Whitehead Coleman, No. 446; of John Jordan, No. 449; of James Galt, No. 451; of Clement Biddle, No. 452; of John Turch, No. -. Each one of these entries calls to-begin at the upper corner of the river of the one next preceding,, and to run up the river a certain specified distance, when reduced to a straight line for its base.
Next after the entry of Turch is that of Walker. I was mistaken in saying this entry was made on the 2d; it was not made until August 16, 1787. It calls to begin at the corner of Turch’s, on the river bank, running up the river four hundred poles when reduced to a straight line, thence at right angles, *and with the general course of the river and with Turch’s line for quantity. This series of entries was surveyed by Arthur Pox, a deputy surveyor, in 1793, and if they were surveyed according to their respective calls, then the land in controversy belongs to the complainant, as the survey upon which his patent is based, actually begins at the lower back corner of Walker’s survey, as surveyed by Pox, and covers a part of the land included in the patent of the defendant.
It must be remembered that Sneed calls to begin at the lower *349 back corner of Walker’s entry, and not of his survey. And the fact that there has been a survey of Walker’s entry can, in no shape, affect Sneed and those claiming under him, unless that survey was properly made. It can not affect Sneed, because his entry was made, and the land covered by it, appropriated before Walker’s survey was executed ; and the execution of that survey can not change the location of land previously appropriated. On the part of the defendant, it is objected to all these surveys made by Fox in 1793, that they were not made according to the entries. They claim that Fox, in surveying the entry of Lawson, commenced at a point more than eight miles above the mouth of Paint'creek, and that in surveying the subsequent and dependent entries, he extended the linos beyond the respective distance called for ; whereas they insist that an entry should be surveyed by strict measurement. It seems to be admitted, and if not admitted, the fact is established by the proof, that if these several entries had been surveyed by strict measurement, the land covered by the complainant’s patent, would be entirely off the ground-appropriated by Sneed’s entry. The only point, then, raised in this case which it is necessary to decide is, whether, in surveying an entry, the surveyor is bound to do it strictly according to the calls of that entry.
Although it seems to be admitted that the most obvious conclusion would be that entries should be thus surveyed, jret it is strenuously argued by plaintiff’s counsel, that a different practice has prevailed in the military district, from the commencement of making locations in that district, and that to interfere at this late period with this practice would be fraught with much evil. It is insisted that it has ever been the custom in making surveys, to extend the lines five per cent, beyond the length called for, and that this custom has been so long, and so uniformly persevered in, as to become, in fact, a part of *the law by which titles and claims to land within the district must be regulated. And it is said that by accepting this mode of surveying, the lands covered by the complainant’s patent, will be found to be the same appropriated by Sneed’s entry.
That the locators in the district have been in the constant habit of appropriating by entry and survey more lands than their warrants called for, thereby defrauding other locators of their rights, and the government of its domain, there can be no doubt; and it is equally true that the courts have, from necessity, been compoiled, *350 in some instances, to wink at those irregularities. But I am not •aware that they have gone so far as to sustain a survey made entirely off the ground appropriated by the entry; especially where such survey encroached upon land already patented to another individual.-
It may not however, be improper to inquire as to this custom. A custom, to obtain the force of law, must be reasonable, must be certain, must be continued, and must have commenced time immemorial, or time whereof the memory of men runneth not to the contrary. 2 Bar. Ch. 232.
1. Is this pretended custom reasonable? If it be reasonable, that a man to whom the government makes a devotion of one thousand acres of land, and suffers him to locate it himself, should, instead of the one thousand acres, appropriate to himself twelve or fifteen hundred acres, then this pretended custom is reasonable. But if by such conduct he commits a fraud upon the government, and upon other individuals in the same situation with himself, it is unreasonable and ought not to be sustained. 2. Is it certain? It is certain that almost every locator has appropriated to himself more land than his warrants would entitle him to; but the question is, whether there has been any certain and uniform rule by which this class of persons have been governed in this respect,.and whether that rule is the one insisted upon by the plaintiff’s counsel. To prove this custom, witnesses are examined, and a letter of the defendant, written at an early period, introduced in evidence. In this letter, the defendant, in speaking of this chain of surveys, commencing eight miles from the mouth of Paint creek, says: “It was customary for the earlier surveyors to make an allowance of five per cent, in the length of line.”
John A. Fulton says: “It was customary for surveyors in the district, in surveying rough, broken, and bushy land, to add four inches to the length of the chain, and some did, and some did *not add to the length of the line measured with a chain thus elongated. That in resurveying some of the old surveys, he has found the lines generally to be longer than called for, some exceeding this length five per cent., some more and some less. He states further, that some few of the old surveys would fall short of the distance callod for. That there is a great variety of measurement in the old surveys, but generally they measure the distance called for. That he ‘ does not know of any general standard or proportion of *351 excess’ ” Cadwallader Wallace, another witness called by the complainant, confirms .the statement of Pulton. Those are the only witnesses examined upon this point. And this testimony, so far from proving any known and certain custom, proves the reverse.
Inasmuch, then, as this pretended custom is neither reasonable nor certain it can not be enforced, and it is unnecessary to inquire as to its commencement or continuance.
Had a custom like the one now contended for ever been recognized in any court, the counsel for the complainant would have produced the case in which it had been so recognized. No such ease, however, is produced. On the contrary, I have ever understood the law to be well settled that an entry must be surveyed according to its calls.' And in resurveying old surveys, where the lines can not be traced, if but one corner can be found, the resurvey must be made from that corner, according to the courses and distances called for in the original survey, extending the lines no further than strict measure. True, if there are natural or artificial objects called for, these shall control course and distance, but in the absence of such objects, course and distance must. govern. This court can not so far pervert the language of Benjamin Uawson as to say, when he called to begin on the Scioto, at a. poin.t eight miles in a direct line above the mouth of Paint creek, he intended to begin eight miles and one hundred and twenty-eight rods above the mouth of Paint creek. And that when he called to run up the river five hundred poles, he intended five hundred and twenty-five poles.'
• It has been urged upon the court that inasmuch as Pox, a regular deputy, surveyed the chain of entries upon the Scioto, upon which Sneed’s entry depends, as early as 1793, it is to be presumed that he surveyed them correctly and according to the practice then prevalent. It is clear, from an examination of the plat before the court, that Pox could not have strictly *regarded the entries. Some of the base lines are longer and some shorter than called for. To have recourse to his surveys, therefore, in ascertaining the beginning corner of Sneed, would be improper.
In order to ascertain this beginning corner the same course must be now pursued as must have been had the entries, upon which his is dependent, never been surveyed. That course is plain; commencing at the mouth of Paint creek, and running up the Scioto, river, eight miles strict measure, we have the beginning corner *352 of Lawson. Eunning up the river from this point five hundred poles, we have his upper corner on the river, and this is the beginning corner of Blair. Pursuing the same course, we shall find the beginning and upper corner on the river of each of the intermediate entries, until we come to. Walker’s. And by running' his lines, according to the calls of his entry, .we find a beginning corner for Sneed; his beginning corner being the lower back corner of Walker. It is admitted that if this course is pursued, Sneed’s entry is entirely without the bounds of the defendant’s-patent, and, of course, the complainant fails in his suit.
Such being the opinion of the court, it is unnecessary to consider the other points made in the case.